UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-06404 MMM (AGRx) | Date | November 4, 2009 |
|---|---|---|---|

| Title | *Danny Perez v. Unified Grocers, Inc.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | None |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order to Show Cause Re: Lack of Subject Matter Jurisdiction

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 28, 2009, Danny Perez filed this action against Unified Grocers, Inc. in Los Angeles Superior Court. Defendant was served with a copy of the summons and complaint on August 5, 2009, and removed the action to federal court on September 2, 2009.

**A.     Plaintiff's Complaint**

Plaintiff was employed as a warehouseman at defendant's distribution facility from February 2004 to May 2008, when he was allegedly terminated for failure to communicate during medical leave and violations of defendant's attendance policy.[1] During the period of employment, plaintiff was a member of the Food, Industrial and Beverage Warehouse, Drivers and Clerical Employees Union-Local 630 (the "Union").[2] As a member of the Union, the

---

[1] Complaint, ¶¶ 20-21, 36 (July 28, 2009).

[2] *Id.*, ¶ 21.

terms of plaintiff's employment were governed by a collective bargaining agreement ("the CBA").[3]

Under the terms of the CBA, administration of defendant's "Attendance and Absentee Policy" is outsourced to Matrix Absence Management, Inc. ("Matrix"), which manages all requests for leave.[4] Between September 2007 and April 2008, plaintiff went on approved leave three times for issues related to a medical condition and the birth of a child.[5] Plaintiff requested and received approval from Matrix for each leave.[6]

After returning to work from leave on April 29, 2008, plaintiff alleges that his supervisors told him he had previously exhausted all of his eligible leave and would be penalized for periods of ineligible leave, despite the fact that Matrix had approved the leaves.[7] Plaintiff cites provisions of the "Attendance and Absentee Policy," which he interprets as prohibiting defendant from assessing penalty points for approved medical absences.[8]

Plaintiff's complaint alleges the following state law claims: (1) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA");[9] (2) discrimination based on perceived disability in violation of FEHA; (3) physical disability discrimination-failure to engage in the interactive process in violation of FEHA; (4) physical disability discrimination-failure to accommodate disability in violation of FEHA; (5) retaliation for exercising right to medical leave pursuant to CFRA in violation of FEHA; (6) wrongful termination in violation of public policy; (7) negligence, and (8) intentional infliction of emotional distress.

### B. Defendant's Notice of Removal

---

[3]Notice of Removal, ¶ 21; Declaration of John Meno in Support of Defendant Unified Grocers, Inc.'s Notice of Removal, ¶ 4.

[4]Complaint, ¶ 24.

[5]*Id.*, ¶¶ 25, 27, 32.

[6]*Id.*, ¶¶ 25, 27, 33-34.

[7]*Id.*, ¶¶ 35-36.

[8]See, e.g., *id.*, ¶ 37 ("Plaintiff was terminated despite the fact that under Paragraph III of UNIFIED's 'Attendance and Absentee Policy' it states that, 'Authorized written leaves of absences which employees may be approved under the terms and conditions of the Collective Bargaining Agreement' shall not result in the assignment of points under the Policy.").

[9]CAL. GOV'T. CODE §§ 12900-12996.

In its notice of removal, defendant contends that § 301 of the Labor Management and Relations Act ("LMRA")[10] preempts plaintiff's claims because "[p]laintiff's claims are rooted in defendants's alleged misapplication and alleged misinterpretation of the terms of the CBA and, therefore, arise under federal law."[11] Accordingly, even though plaintiff asserts no federal claims, defendant contends that plaintiff's claims should be characterized as brought under the LMRA. As a consequence, it asserts, the court has jurisdiction to hear the case because plaintiff's right to relief depends on resolution of a federal question.

## II.  DISCUSSION

### A.  Legal Standard Governing Removal Jurisdiction

A suit may be removed to federal court pursuant to 28 U.S.C. § 1441(a) only if it could have been brought there originally. See *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983). "Federal district courts have original federal question jurisdiction of actions 'arising under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.), cert. denied, 484 U.S. 850 (1987) (quoting 28 U.S.C. § 1331). Generally, a claim "arises under" federal law only if a federal question appears on the face of plaintiff's complaint. Thus, removal jurisdiction is lacking even if defendant asserts a defense based exclusively on federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The party who brings the suit is master to decide what law he will rely upon"); *Constr. Laborers Vacation Trust*, 463 U.S. at 27-28 ("federal courts have jurisdiction to hear, originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); *id.* at 10 ("a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law" (emphasis added)); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Hunter v. United Van Lines*, 746 F.2d 635, 641 (9th Cir. 1984), cert. denied, 474 U.S. 863 (1985).

There are, however, exceptions to the "well-pleaded complaint rule" that allow the court to look beyond the face of plaintiff's pleading. Among these is the "artful pleading" doctrine, which provides that a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action. If the claim arises under federal law, the federal court will recharacterize it and uphold removal. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, n. 2 (1981); *Schroeder v. TransWorld Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983). The "artful pleading" doctrine applies to state claims that are

---

[10] 29 U.S.C. § 185(a).

[11] Notice of Removal, ¶ 7.

completely preempted by federal law.  See *Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); *Sullivan,* 813 F.2d at 1372 ("A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy").  "A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law . . . ; [and] (2) where the right to relief depends on the resolution of a substantial, disputed federal question."  *ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000).

Under the complete preemption doctrine, a state law cause of action can be transformed into a federal claim by a federal statute whose preemptive force is "extraordinary."  See *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("[t]he [complete preemption] doctrine applies in select cases where the preemptive force of federal law is so 'extraordinary' that it converts state common law claims into claims arising under federal law for purposes of jurisdiction," citing *Caterpillar*, 482 U.S. 386); *Gregory v. Sprint Spectrum L.P.*, No: 03-CV-0676 W (POR), 2003 U.S. Dist. LEXIS 10943, * 6 (S.D. Cal. Jun. 13, 2003) ("When a federal claim completely preempts a state claim, 'any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law,'" quoting *Franchise Tax Bd.*, 463 U.S. at 24).

The complete preemption doctrine, however, is narrowly construed.  See *Holman*, 994 F.2d at 668 ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule'"); *Gatton v. T-Mobile USA, Inc.*, No. SACV 03-130 DOC, 2003 WL 21530185, * 5  (C.D. Cal. Apr. 18, 2003) ("The complete preemption doctrine is, however, extremely narrow," citing *TPS Utilicom Services, Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089, 1097 (C.D. Cal. 2002)).  "[O]nly three areas have been deemed areas of complete preemption by the United States Supreme Court: (1) claims under the Labor Management Relations Act [LMRA]; (2) claims under the Employment Retirement and Insurance Security Act (ERISA); and (3) certain Indian land grant rights."  *Gatton*, 2003 WL 21531085 at * 5; see also *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 585 (9th Cir. 1990) ("complete preemption . . . is extremely limited, existing only where a claim is preempted by [the LMRA]; where a state law complaint alleges a present right to possession of Indian tribal lands; and where state tort or contract claims are preempted by [ERISA]" (internal citations omitted)).

      **B.**    **Section 301 Preemption**

Section 301 of the LMRA provides that "suits for violation of contracts between an employer and a labor organization" fall within the exclusive jurisdiction of the federal courts.  29 U.S.C. § 185(a); see *Franchise Tax Bd.*, 463 U.S. at 23 ("The preemptive force of § 301

is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301"); see also *Caterpillar*, 482 U.S. at 393; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404 & n. 3 (1988).

To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege a violation of a collective bargaining agreement. See *Allis-Chalmers*, 471 U.S. at 210-11 ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation"). A state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution requires judicial interpretation of those terms. *Id.* at 213 (holding that section 301 preempted a tort claim for breach of the duty of good faith and fair dealing because "good faith" and "fair dealing" had to be assessed with reference to the parties' contractual obligations).

Despite the broad preemptive effect of section 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis-Chalmers*, 471 U.S. at 213; see also *Tellez v. Pacific Gas & Elec. Co., Inc.*, 817 F.2d 536, 537 (9th Cir. 1987) ("The Court framed the test for preemption of a tort claim as whether the tort 'confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract,'" quoting *Allis-Chalmers*, 471 U.S. at 213), cert. denied, 484 U.S. 908 (1987). Thus, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of a labor contract, § 301 does not preempt a claim for violation of the law. See *Miller v. AT&T Network Systems*, 850 F.2d 543, 546 (9th Cir. 1988); *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003); *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

For this reason, not every dispute involving the provisions of a collective bargaining agreement is preempted by the LMRA. "When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption. However, § 301 does preempt state law claims that are 'substantially dependent' on an analysis of a collective bargaining agreement." *Firestone*, 219 F.3d at 1065; see also *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075-76 (9th Cir. 2005) ("the Supreme Court has expanded § 301 preemption to include cases the resolution of which is substantially dependent upon analysis of the terms of [a collective bargaining agreement]. . . . [N]ot every claim which requires a court to refer to the language of a labor-management

agreement is necessarily preempted[, however]. . . . A claim brought in state court on the basis of a state-law right that is independent of rights under the collective-bargaining agreement, will not be preempted. . . . In addition, when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished. Thus, in order for complete preemption to apply, the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense"(internal quotations and citations omitted)); *Cramer v. Consolidated Freightways, Inc.*, 209 F.3d 1122, 1129 (9th Cir. 2000) ("It is by now well-settled that Section 301 preempts state law claims which are founded on rights created by a collective bargaining agreement, or which are 'substantially dependent on analysis of a collective bargaining agreement'"). "Although the language of § 301 is limited to '[s]uits for violation of contracts,' courts have concluded that, in order to give the proper range to § 301's policies of promoting arbitration and the uniform interpretation of collective bargaining agreement provisions, § 301 'complete preemption' must be construed to cover 'most state-law actions that require interpretation of labor agreements.'" *Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997).

### C. Whether Plaintiff's Claims are Preempted

To determine whether plaintiff's state law claims are preempted by § 301, the court must examine whether resolution of the claims requires interpretation of the CBA. Defendant contends that § 301 preempts the claims because they "are rooted in defendant's alleged misapplication and alleged misinterpretation of the terms of the CBA and, therefore, arise under federal law."[12] Plaintiff, however, has pled claims for violations of rights that exist independently of the CBA.[13]

The parties apparently agree that the CBA governs the terms of plaintiff's employment.[14] Defendant notes, moreover, that plaintiff alleges he was discharged for

---

[12]*Id.*

[13]See, e.g., Complaint, ¶ 37 (acknowledging that discrimination laws and the CBA provide two distinct sources of rights and stating that "[a]s a result, UNIFIED not only violated California's disability laws when it terminated Plaintiff, it even failed to adhere to its own progressive disciplinary policy when it came to Plaintiff's attendance therefore breaching the terms and conditions of Plaintiff's employment").

[14]See, e.g., *id.*, ¶ 21 ("Plaintiff was a member of the Food, Industrial and Beverage Warehouse, Drivers and Clerical Employees Union-Local 630 during the applicable period"); *id.*, ¶¶ 33-34 (alleging that defendant's attendance policy was "negotiated as part of the Collective Bargaining Agreement . . with Plaintiff's Union," and that the CBA conferred

exceeding the requisite point total under the Attendance and Absentee Policy, which was enacted pursuant to the CBA.[15] Additionally, plaintiff alleges that defendant incorrectly interpreted the CBA when deciding to terminate his employment.[16]

Defendant nonetheless mischaracterizes plaintiff's claim when it contends that "[a]t its core, Plaintiff's lawsuit is about an alleged violation of the CBA."[17] Rather, plaintiff's lawsuit concerns the termination of his employment for alleged discriminatory reasons in violation of state antidiscrimination statutes. Plaintiff, who allegedly suffers from a disability as defined by FEHA,[18] offers numerous factual allegations concerning the fact that his employment was terminated due to his disability. For example, plaintiff alleges that his "disability and prior requests for disability leave were a motivating and substantial factor in Defendants' termination of his employment,"[19] and that defendant "engaged in actions intentionally that resulted in Plaintiff being treated less favorably because of his disability and ultimately being discharged because of his disability." In fact, plaintiff unambiguously asserts that defendant decided to terminate his employment merely "under the guise that he had violated Defendants' Attendance and Absentee Policy."[20] In short, it appears apparent on the face of the complaint that this lawsuit is about discrimination based on a real or perceived disability in violation of FEHA, not necessarily about termination in violation the terms of the CBA.

Statutory rights under FEHA exist whether or not they are enumerated in a negotiated collective bargaining agreement. See *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1527 (9th Cir. 1995) ("First, Jimeno's prima facie FEHA claim can be evaluated without reference to the CBA even though the factual inquiry deals with the same underlying factual situation that is governed by the [the CBA's] fitness examination provisions. . . . Second, clear statutory and regulatory standards provide a means to determine "reasonable accommodation without

---

certain rights on plaintiff concerning medical and disability leave).

[15]*Id.*, ¶ 36 ("Plaintiff was discharged for his alleged failure to communicate during this medical leave and for exceeding the requisite point total pursuant to UNIFIED's Attendance Policy").

[16]*Id.*, ¶ 37.

[17]Notice of Removal, ¶ 10.

[18]Complaint, ¶ 40. Plaintiff alleges that he "suffered from . . . major depression, general anxiety disorder, stress and gastritis which he sustained as a result of harassment and retaliatory conduct by his supervisors at work."

[19]Complaint, ¶ 43.

[20]Complaint, ¶ 42.

reference to the CBA" (internal citations omitted)); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989) (holding that a FEHA claim was not preempted, and stating that "antidiscrimination statutes [are] not preempted by section 301 because the right is defined and enforced under state law without reference to the terms of any collective bargaining agreement"); *Ackerman v. Western Electric Co., Inc.*, 860 F.2d 1514, 1517-18 (9th Cir. 1988) (FEHA disability discrimination claim was not preempted by section 301 even where the CBA contained general anti-discrimination clause because the right was defined and enforced under state law without reference to the terms of the collective bargaining agreement); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993) (stating that the "right to be free from discrimination . . . *does* exist independently of private agreements and cannot be altered or waived" (emphasis original and internal citation omitted)); *Perez v. Proctor and Gamble Mfg. Co.*, 161 F.Supp.2d 1110, 1118 (E.D. Cal. 2001) (same, in the context of constructive termination based on mental disability).

Plaintiff alleges no federal causes of action, but rather claims based on statutory rights granted under FEHA. For this reason, the court is in doubt as to whether plaintiff's claims are preempted by the LRMA and whether the court has subject matter jurisdiction to hear this case.

### III.  CONCLUSION

For the reasons stated, defendant is ordered to show cause on or before **November 10, 2009**, why this action should not be remanded to Los Angeles Superior Court for lack of subject matter jurisdiction. Should defendant fail to respond on or before **November 10, 2009**, the court will automatically remand the action case to Superior Court. Plaintiff may file a response to the court's order to show cause on or before **November 17, 2009.**